UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

MARIE ALEXANDRINE BALDIA,
a/k/a MARIE ALEXANDRINE NADELA,
on behalf of herself and of all others similarly
situated,

         *Plaintiff*,

    - against -

RN EXPRESS STAFFING REGISTRY LLC,
SALLY NUNEZ and ALEXANDER
ALEJANDRINO,

         *Defendants.*

------------------------------------------------------------------------x

Index No. 19-cv-_____

CLASS ACTION COMPLAINT

   **Plaintiff** MARIE ALEXANDRINE BALDIA, also known as MARIE ALEXANDRINE

NADELA, by undersigned counsel, on behalf of herself and all others similarly situated, as and

for her complaint against Defendants RN Express Staffing Registry LLC, Sally Nunez, and

Alexander Alejandrino, alleges as follows:

## PRELIMINARY STATEMENT

   1.  This is an action for damages and injunctive relief for violations of the

Trafficking Victims Protection Act, (TVPA), 18 U.S.C. §§ 1589, *et seq.*, for breach of the

parties' employment contract, and for a declaratory judgment that a $33,320 promissory note

indenture is unenforceable under the TVPA, the 13th Amendment to the United States

Constitution, and New York or common law.

   2.  The TVPA, declaratory judgment, and breach of contract claims are brought as a

class action, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on

behalf of all Filipino registered nurses who worked for Defendant RN Express Staffing Registry,

LLC since December 9, 2009 under an employment contract containing a $33,320 so-called "liquidated damages" clause.

3.    This action arises out of Defendants' recruitment, provision and/or obtaining of Plaintiff's labor or services through the use of fraud and the abuse of the immigration process that resulted in the forced labor and wage exploitation of the Plaintiff by Defendants.

4.    Defendants are foreign labor recruiters who have recruited more than 100 registered nurses from the Philippines to work for Defendants in the state of New York under contracts of indentured servitude.

5.    Defendants made false and fraudulent promises in their immigration sponsorship petitions with regard to the payment of prevailing wages to lure Plaintiff and other Filipino registered nurses into employment, only for the Plaintiff and the other registered nurses to later realize Defendants did not correctly pay them their offered prevailing wage rates.

6.    Plaintiff was forced under the circumstances to continue working for Defendants despite her complaints of not being paid the prevailing wage rate because of Defendants' threats to have her pay the $33,320 indenture.

7.    While Defendants characterize the $33,320 indenture as "liquidated damages", there is in fact no basis for this claim. To keep the Plaintiff and other similarly-situated registered nurses from leaving their employment, the Defendants threaten the registered nurses with serious harm, including threats to enforce the draconian penalties in their employment contracts.

8.    On behalf of herself and all other Filipino registered nurses employed by the Defendants, Plaintiff seeks: compensatory and punitive damages for violations of the Trafficking Victims Protection Act (18 U.S.C. §1589 and 18 U.S.C. §1590); compensatory damages and pre- and post-judgment interest for breach of contract; an injunction prohibiting Defendants from

threatening to enforce or enforcing the indenture in the employment contracts; a declaration that the indenture is unenforceable under the TVPA and the 13th Amendment to the U.S. Constitution, 42 U.S.C. § 1994; an award of reasonable attorney's fees and costs as authorized by 18 U.S.C. 1595(a); and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 18 U.S.C. §1595(a) (Trafficking Victims Protection Act) (TVPA, 18 U.S.C. 1589, 1590), in that these claims are asserted under the laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's pendent state/common law claims pursuant to 28 U.S.C. §1367 because the state/common law claims form part of the same case or controversy as the federal law claims.

10.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York. Venue is also proper in this Court under 28 U.S.C. §1391(c) because Defendant company is deemed to reside in this judicial district where Defendant company has owned, operated, managed, and maintained a nursing staffing company where the named Plaintiff was employed and is subject to personal jurisdiction.

## PARTIES

11.    Plaintiff MARIE ALEXANDRINE BALDIA, also known as MARIE ALEXANDRINE NADELA ("Plaintiff") is a registered nurse licensed in the state of New York, and an employee of the Defendants. She is a citizen of the Philippines and presently resides in Nassau County, state of New York.

12.     Defendant RN EXPRESS STAFFING REGISTRY, LLC ("Defendant RN Express") is, upon and information, a limited liability company duly organized and existing under the laws of the state of New York. Likewise upon information and belief, it maintains an office at 71 West 23rd Street, Suite 1622, New York, NY 10010, within this District.

13.     Upon information and belief, Defendant RN Express was, at all times relevant, a healthcare staffing services provider, and was engaged in providing registered nurses, among other healthcare professionals, to work at various healthcare facilities within the United States, including in counties covered by this District.

14.     Defendant SALLY NUNEZ ("Nunez") was, upon information and belief, at all times relevant, the Chief Executive Officer, a managing member and/or agent of Defendant RN Express.

15.     Defendant ALEXANDER ALEJANDRINO ("Alejandrino") was, upon information and belief, at all times relevant, the Administrator, an executive officer, a managing member and/or agent of Defendant RN Express.

16.     Upon information and belief, Defendants RN Express, Nunez, and Alejandrino had the power to hire and fire the Plaintiff, establish and pay her wages, set her work schedules and maintain her employment records.

17.     At all relevant times, and upon information and belief, Defendants RN Express, Nunez, and Alejandrino transacted business communications and negotiated agreements from their New York City office with their clients and/or employees, utilizing in the process the postal service or other courier delivery service, the phone, fax, and/or email communications systems that moved along interstate boundaries.

18.    Upon information and belief, at all relevant times, Defendants RN Express, Nunez, and Alejandrino regularly communicated with their employees, including herein Plaintiff, through phone, text, fax and/or email service systems. From their New York City office, Defendants gave instructions to their employees with regard to their staffing assignments and/or instructions, and, upon information and belief, made inter-bank transactions, such as making direct deposits to their employees' bank accounts from their banks opened and maintained in New York.

19.    Upon information and belief, at all relevant times, Defendants sourced out and entered into staffing agreements with healthcare facilities located all over the country, and in the process engaged in acts that have effects in New York, such as when they signed staffing agreements with healthcare facilities, and/or sent staffing agreements or staffing assignments to their clients or to their employees, including to herein Plaintiff, out of their New York City office.

20.    Defendants, through their case managers and nurse recruiters, communicated with Plaintiff, during all times relevant, either through phone, text, and/or email communications, and gave instructions to Plaintiff regarding Plaintiff's immigration sponsorship issues, work assignments, scheduling, duties, and payroll issues.

21.    Upon information and belief, at all times relevant, Defendants RN Express, Nunez, and Alejandrino determined Plaintiff's place of employment, established the terms of her employment, controlled her work schedules and supervised her work.

22.    Defendants Nunez and Alejandrino, upon information and belief, exercised complete domination and control of Defendant RN Express in respect to the conduct alleged in this Complaint, including violations of the Trafficking Victims Protection Act designed to coerce

the continued performance of Plaintiff and other Filipino registered nurses under their employment contracts notwithstanding the Defendants' failure to pay the required prevailing wages.

23.     Defendants Nunez and Alejandrino, upon information and belief, used their complete domination and control of Defendant RN Express to commit wrongs against Plaintiff and other Filipino registered nurses, including violations of the Trafficking Victims Protection Act designed to coerce the continued performance of Plaintiff and other Filipino registered nurses under their contracts notwithstanding the Defendants' failure to pay the required prevailing wages.

24.     Defendants RN Express, Nunez, and Alejandrino are associated in fact and comprise a venture as that term is used in the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589 and 1595.

25.     All of the acts alleged in this Complaint were authorized, ordered, and implemented by Defendants.

## STATEMENT OF FACTS

26.     Plaintiff is a nurse by training or education, having graduated with a Master's degree in Nursing from an educational institution in the Philippines.

27.     At all times relevant, Plaintiff was licensed to practice as a registered nurse in the state of New York.

28.     Plaintiff has had more than five years of relevant experience working as a Registered Nurse in the Philippines.

29.     Upon information and belief, for more than ten years, Defendants RN Express, Nunez, and Alejandrino have recruited Filipino nurses to work for their company. Throughout

this time, the Defendants have required the Filipino nurse-recruits to execute a standard Employment Agreement.

30.     Sometime February 2016, Defendants Nunez and Alejandrino went to Davao City, Philippines and recruited Plaintiff to be sponsored and to be employed by Defendants for the position of Registered Nurse Supervisor.

31.     Plaintiff accepted Defendants' offer of employment for the position of Registered Nurse Supervisor.

32.     Pursuant to their agreement, the Defendants caused the filing of a Form I-140 immigrant petition on behalf of the Plaintiff with the U.S. Citizenship and Immigration Services (USCIS) of the U.S. Department of Homeland Security (USDHS) on or about April 15, 2016.

33.     Upon information and belief, in filing Form I-140 immigrant petition on Plaintiff's behalf, Defendants, as petitioning employer, promised the U.S. Citizenship and Immigration Services (USCIS) that they would pay Plaintiff, their beneficiary, at least the prevailing wage rate for the offered position (Registered Nurse Supervisor) at the area of employment.

34.     Upon information and belief, Defendants submitted to the Immigration Service Form ETA 9089 which included this promise to pay Plaintiff at least the prevailing wage rate. In the Form ETA 9089, Defendants also promised that they would be "able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States" and that the job opportunity "was not vacant".

35.     Likewise upon information and belief, before Defendants RN Express, Nunez, and Alejandrino filed the Form I-140 petition with the Immigration Service, they applied with

the U.S. Department of Labor (USDOL) and secured the prevailing wage rate for the offered position in the area or site of employment.

36.     Upon information and belief, Defendants sought the prevailing wage rate for a Registered Nurse Supervisor position in the metropolitan statistical area of New York City and suburbs, in the state of New York.

37.     Upon information and belief, Defendants sponsored Plaintiff as an EB-2 immigrant worker, which meant that the position they offered her was a supervisory position that required at least a Master's degree in Nursing, or at least Bachelor's degree in Nursing and five years of relevant nursing experience.

38.     The Form I-140 immigrant petition filed by Defendants on behalf of the Plaintiff was approved by the U.S. Citizenship and Immigration Services in or about May 2016.

39.     As a result of the approval of Defendants' Form I-140 immigrant petition, Plaintiff was scheduled to be interviewed for the issuance of her immigrant visa by the U.S. Embassy in Manila, Philippines on or about May 18, 2018.

40.     Prior to her interview date, Plaintiff was required by the Defendants to execute and sign their standard Employment Agreement.

41.     On or about May 5, 2018, Plaintiff signed the Defendants' standard employment contract to work for the Defendants. The contract was countersigned by Defendant RN Express's Administrator, herein Defendant Alejandrino. The position offered by Defendants and accepted by the Plaintiff was Registered Nurse Supervisor.

42.     The Defendants' standard employment contract for registered nurses, such as the one Plaintiff signed, provides that in exchange for immigration sponsorship and employment, the Healthcare Professional candidate promises to work for Defendants for a three-year period.

8

43.    The Defendants' standard employment contract likewise provides that the Healthcare Professional candidate "will be paid the higher (sic) of the prevailing wage for the occupation as determined by the U.S. Department of Labor for the particular Facility to which Healthcare Professional is assigned".

44.    The Defendants' standard employment contract likewise provides that "in the event that Healthcare Professional terminates the Employment Agreement without cause and does not complete the employment term or if the Company terminates the Employment Agreement with cause", "the Company Recruitment Costs" in the amount of "Thirty Three Thousand Three Hundred Twenty Dollars ($33,320.00)" "shall become due and payable by Healthcare Professional to the Company as liquidated damages in accordance with the Promissory Note".

45.    In addition to requiring the Plaintiff to sign the standard Employment Agreement before her interview date, the Defendants likewise required Plaintiff to sign a Promissory Note prepared by Defendants whereby Plaintiff was made to promise to pay to the order of Defendant RN Express the amount of $33,320.00, allegedly for value received.

46.    On or about May 8, 2018, Defendant Alejandrino, on behalf of Defendant RN Express, issued a letter addressed to the U.S. Embassy in Manila, Philippines confirming the offer of full-time employment to the Plaintiff as a Nurse Supervisor with an annual salary of $99,008.00.

47.    Upon information and belief, the prevailing wage rate for the position of a Level 4 Registered Nurse in the New York City metropolitan statistical area in May 2018 was $99,008.00.

48.    Upon information and belief, a Level 4 wage rate is assigned to a job offer for a competent employee who has sufficient experience in the occupation to plan and conduct work requiring judgment and the independent evaluation, selection, modification and application of standard procedures and techniques. The employee generally has management and/or supervisory responsibilities.

49.    Upon information and belief, the Registered Nurse Supervisor position offered by Defendants to the Plaintiff required a Level 4 wage rate.

50.    Because of the signed Employment Agreement and the letter by Defendant Alejandrino confirming the job offer to the Plaintiff, the U.S. Embassy in Manila, Philippines issued Plaintiff on August 2, 2018 her immigrant visa or green card to enter and work as a Registered Nurse Supervisor in the United States.

51.    With the issuance and approval of her immigrant visa, Plaintiff entered the United States on or about September 27, 2018.

52.    On October 9, 2018, Plaintiff presented herself to Defendants ready to be given her work assignment.

53.    Defendants gave Plaintiff orientation or training on October 15, 2018.

54.    Sometime last week of October 2018, Defendants assigned Plaintiff to work at the Amsterdam Harbor Side Nursing Home in Port Washington, New York.

55.    Defendants were not able to immediately give Plaintiff employment after her orientation or training. They were not able to place Plaintiff on their payroll upon Plaintiff's arrival or entrance into the United States.

56.    Despite their promises on the Form I-140 immigrant petition and on the Form ETA 9089, Defendants were not able to provide actual work assignment to the Plaintiff until October 21, 2018.

57.    When Defendants did finally give Plaintiff work assignment, they required Plaintiff to work as a Registered Nurse, not as a Registered Nurse Supervisor.

58.    Even though the position given her was that of a Registered Nurse position, Plaintiff performed the duties and responsibilities of a Registered Nurse Supervisor, as embodied in Defendant Alejandrino's letter to the U.S. Embassy in Manila, to wit: "supervise the provision of general nursing care to patients; administer prescribed medications and treatments in accordance with approved nursing techniques; prepare equipment and aid physicians during treatment and examination of patients; observe patients; record significant conditions and reactions; notify physician of patient's condition and reaction to drugs, treatment and significant incidents; conduct periodic patient rounds with newly hired nursing staff to ensure quality of care and ensure that nursing procedures are correctly conducted; and oversee the duties of LPNs, CNAs and newly hired nursing staff".

59.    Defendants effectively paid Plaintiff an hourly wage rate of about $33.00.

60.    Upon information and belief, the USDOL prevailing wage rate for a Level 4 Registered Nurse (Supervisor) working in Nassau County, New York for the period including October 2018 through June 30, 2019 was $48.68 per hour.

61.    Upon information and belief, the USDOL prevailing wage rate for a Level 4 Registered Nurse (Supervisor) working in Nassau County, New York for the period starting on July 1, 2019 through June 2020 is $49.63 per hour.

62.    To date, Defendants continue to effectively pay Plaintiff the hourly wage rate of only about $33.00 to $34.00.

63.    Upon information and belief, the Defendants engaged and are engaging in a policy and practice of paying Filipino registered nurses less than the prevailing wages required by their employment contracts by not paying them all of their hours of work.

64.    Upon information and belief, the Defendants regularly make arbitrary, unilateral deductions from their employees' number of work-hours and pay them at rates that almost approximate the prevailing wage rates, but because the number of hours paid is much less than the actual hours worked by the employees, the effective rate paid to the employees is only about thirty three dollars ($33.00) to thirty four dollars ($34.00) per hour, which is well below the prevailing wage rate.

65.    As and by way of an example, Plaintiff performed nursing duties on the following days and times:

| | |
|---|---|
| October 20, 2019 (Sunday) | = No work |
| October 21, 2019 (Monday) | = No work |
| October 22, 2019 (Tuesday) | = No work |
| October 23, 2019 (Wednesday) | = No work |
| October 24, 2019 (Thursday) | = from 7 am to 7 pm, or 11.5 hours |
| October 25, 2019 (Friday) | = from 7 am to 7 pm, or 11.5 hours |
| October 26, 2019 (Saturday) | = from 7 am to 7 pm, or 11.5 hours |
| | Total Weekly Work Hours    = 34.5 hours |

| | |
|---|---|
| October 27, 2019 (Sunday) | = from 7 pm to 7 am, or 11.5 hours |
| October 28, 2019 (Monday) | = No work |
| October 29, 2019 (Tuesday) | = from 7 am to 7 pm, or 11.5 hours |
| October 30, 2019 (Wednesday) | = No work |
| October 31, 2019 (Thursday) | = from 7 am to 7 pm, or 11.5 hours |
| November 1, 2019 (Friday) | = from 7 pm to 7 am, or 11.5 hours |
| November 2, 2019 (Saturday) | = No work |
| | Total Weekly Work Hours    = 46 hours |

66.    For this particular two-week pay period, Plaintiff submitted to Defendants her time sheets countersigned by the Director of Nursing or designee of the facility where Plaintiff worked. In this two-week pay period example, Plaintiff worked a total of 80.5 hours.

67.    Defendants arbitrarily deducted or reduced Plaintiff's work-hours, and credited Plaintiff only with the following work-hours, as shown on their employer-generated Web Time Sheets:

| | |
|---|---|
| October 24, 2019 (Thursday) | = 11.5 hours |
| October 25, 2019 (Friday) | = 11.5 hours |
| October 26, 2019 (Saturday) | = 1.3 hours |
| | Total Weekly Hours Credited = 24.3 hours |
| | |
| October 27, 2019 (Sunday) | = 11.5 hours |
| October 29, 2019 (Tuesday) | = 11.5 hours |
| October 31, 2019 (Thursday) | = 5.76 hours |
| November 1, 2019 (Friday) | = 5.76 hours |
| | Total Weekly Hours Credited = 34.52 hours |

68.    In this two-week pay-period example, Defendants paid Plaintiff the total number of only 58.82 hours, even though Plaintiff actually worked a total of 80.5 hours.

69.    In this two-week pay-period example, Defendants paid Plaintiff the hourly wage rate of $46.85, although the DOL prevailing wage rate for a Level 4 Registered Nurse (Supervisor) working in Nassau County, New York was $49.63 per hour.

70.    In this two-week pay-period example, Defendants paid Plaintiff the total gross wages of $2,755.72.

71.    In this particular two-week pay-period example, Plaintiff should have been paid the actual total work hours of 80.5 hours at the correct prevailing wage rate of $49.63, or the total correct gross wages of $3,995.21.

72.    Because Plaintiff was paid only $2,755.72 gross wages for his 80.5 actual number of work hours for this particular two-week pay-period example, his actual hourly wage rate was only $34.23.

73.    Plaintiff was effectively paid and is being paid less than the prevailing wage rate determined by the U.S. Department of Labor.

74.    Upon information and belief, the Defendants engaged and are engaging in a policy and practice of paying Filipino registered nurses less than the prevailing wages required by their employment contracts through the arbitrary deductions of their actual work-hours.

75.    The Defendants have engaged and are engaging in a deliberate scheme, pattern and plan intended to cause Plaintiff and other Filipino registered nurses to believe that they would suffer serious harm if they tried to leave the Defendants' employ or find other employment.

76.    The Defendants' standard employment contract provides that the Filipino registered nurses cannot stop working until they pay a $33,320.00 indenture disguised as "liquidated damages".

77.    The $33,320.00 indenture is designed to coerce the registered nurses into continuing their employment with the Defendants.

78.    The amount of $33,320.00 indenture is disproportionate to the actual costs incurred by the Defendants.

79.    The $33,320.00 indenture is disproportionate to the compensation paid to the Filipino registered nurses.

80.    The purpose of the $33,320.00 indenture is not to compensate Defendants for actual or potential damages.

14

81.    The purpose of the $33,320.00 indenture is to obtain and provide Plaintiff's labor and services to Defendants and their clients.

82.    Defendants are and were able to calculate the amount of actual damages they would suffer in the event a Filipino registered nurse breached the employment contract.

83.    Plaintiff reasonably feared that Defendants would sue her for the $33,320.00 indenture and promissory note referred to in the employment contract.

84.    Plaintiff reasonably fears that the costs of defending herself against Defendants' threatened legal action will cause her to suffer serious harm.

85.    The $33,320.00 indenture is part of a contract of adhesion that Defendants obtained as a result of unequal sophistication and bargaining power.

86.    Upon information and belief, during the class period, Defendants employed more than one hundred registered nurses, including the Plaintiff Baldia.

87.    During the class period, and at all times relevant herein, Plaintiff was employed by the Defendants as a licensed registered nurse routinely expected to, and in fact, did, work on a full-time basis, but was not properly compensated the correct prevailing wage rate for all of her hours of work.

88.    During the class period, and at all relevant times herein, upon information and belief, Defendants likewise employed other registered nurses similarly situated to and like the Plaintiff who also worked on a full-time basis, but were not properly compensated the correct prevailing wage rates for all of their hours of work relative to their position at the pertinent metropolitan statistical area of employment.

## CLASS ALLEGATIONS

89.    Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

90.    Plaintiff brings her TVPA claim on behalf of all persons who were or are employed by Defendants at any time since December 9, 2009, to the entry of judgment in this case (the "Class Period"), as hourly paid Registered Nurses, and have been compelled to continue performing labor or services for Defendants because of the abuse or threatened abuse of law or legal process, or because of serious harm and threats of serious harm, or because of a scheme, plan, or pattern intended to cause Plaintiff and the members of the Class to believe that, if they did not perform such labor or services, they would suffer serious harm (the "Class").

91.    Excluded from the Class are the Defendants, Defendants' legal representatives, officers, directors, assigns and successors, and/or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

92.    The claims of the Class are properly brought as a class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

93.    The claims of the class are properly brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

    a.    Numerosity: The potential class members are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control

of the Defendants, upon information and belief, there are approximately more than 100 members of the Class during the relevant Class Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, and/or knowledge of their claims, and are fearful of retaliation.

b.    Commonality: Common questions of law and fact exist as to the Class that predominate over any questions only affecting them individually, and these include, but are not limited to the following:

i.    whether Defendants engaged in a policy and practice of failing to pay Filipino nurses the prevailing wages required by their standard employment agreements for all their hours of work;

ii.    whether Defendants engaged in a policy and practice of using threats of enforcing the liquidated damages and promissory note provisions in their employment contracts by legal action to coerce Filipino nurses to continue working for them;

iii.    whether Defendants' practice and/or policy of not paying Filipino nurses the prevailing wage rates for all their hours of work was instituted willfully or with reckless disregard of the law;

iv.    whether the indenture or so-called "liquidated damages" clause and the promissory note addendum/exhibit to the employment agreements are unenforceable;

v.    whether Defendants engaged in a policy and practice of using an unenforceable indenture or contract termination penalty to coerce Filipino nurses to continue working for them;

vi.  whether the Defendants are liable to the class;

vii.  whether the Class can be made whole by the payment of damages, and;

viii.  whether Defendants Nunez and Alejandrino are personally liable for the damages sustained by class members.

c.  Typicality:  The claims of Plaintiff are typical of the claims of the Class she seeks to represent.  Plaintiff and all members of the Class work or have worked for Defendants as hourly-paid Registered Nurses. Plaintiff and the members of the Class enjoy the same rights to be paid wages for all hours worked at the prevailing wage rates. Plaintiff and members of the Class have all sustained similar types of damages as a result of Defendants' failure to comply with the employment contracts and of Defendants' use of threats of legal action to enforce the "liquidated damages" and promissory note provisions in their employment contracts. Plaintiff and the members of the Class have all been injured in that they have been under-compensated due to Defendants' policy, practice and pattern of conduct of not paying the prevailing wages for all their hours of work.

d.  Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff understands that as a class representative, she assumes a fiduciary responsibility to the Class to represent its interests fairly and adequately.   Plaintiff recognizes that as a class representative, she must represent and consider the interests of each Class just as she would represent and consider her own interests.  Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over the

interests of the Class.  Plaintiff recognizes that any resolution of the class action must be in the best interest of the Class.  Plaintiff understands that in order to provide adequate representation, she must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial.  Plaintiff has retained counsel competent and experienced in complex class actions, employment litigation and TVPA claims. There is no conflict between Plaintiff and the members of the Class.

        e.        Superiority:  A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the contexts of wage and hour litigation and labor trafficking litigation, where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

94.     This action is properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(3).

### FIRST CAUSE OF ACTION
**Violation of the Trafficking Victims Protection Act**
**18 U.S.C. § 1595**

95.     Plaintiff, on behalf of herself and the Class, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

96.     Defendants knowingly provided and obtained the labor and services of Plaintiff and other members of the Class by means of the abuse or threatened abuse of law or legal process, including without limitation, the use or threatened use of a law or legal process to exert

pressure on Plaintiff and other members of the Class to continue working for the Defendants and to refrain from seeking employment elsewhere.

97.    Defendants knowingly provided and obtained the labor and services of Plaintiff and other members of the Class by means of serious harm and threats of serious harm to Plaintiff and other members of the Class, including without limitation, psychological, financial or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstance to perform or to continue performing labor or services in order to avoid incurring that harm.

98.    Defendants knowingly provided and obtained the labor and services of Plaintiff and other members of the Class by means of a scheme, plan, or pattern intended to cause Plaintiff and other members of the Class to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation, psychological, financial or reputational harm, that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

99.    Defendants knowingly benefited, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

100.    Defendants knowingly recruited, transported, provided, and obtained Plaintiff and members of the Class for labor or services in violation of 18 U.S.C. §§ 1589, 1590, 1594(a) and 1594(b).

101.    By reason of the conduct described above, Defendants were perpetrators of violations of 18 U.S.C. §§ 1589, 1590, 1594(a) and 1594(b).

102.    Plaintiff and the other Class members suffered damages as a direct and proximate result of the Defendants' conduct.

103.    Plaintiff and the other Class members are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorney's fees and the costs of this action.

**SECOND CAUSE OF ACTION**
**Violation of the Trafficking Victims Protection Act**
**18 U.S.C. § 1594(b)**

104.    Plaintiff, on behalf of herself and the Class, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

105.    Defendants conspired with one another to violate 18 U.S.C. §§ 1589 and 1590.

106.    Defendants agreed to provide and obtain the labor and services of Plaintiff and other members of the Class by means of the abuse or threatened abuse of law or legal process, including without limitation, the use or threatened use of a law or legal process to exert pressure on Plaintiff and other members of the Class to continue working for the Defendants and to refrain from seeking employment elsewhere.

107.    Defendants agreed to provide and obtain the labor and services of Plaintiff and other members of the Class by means of serious harm and threats of serious harm to Plaintiff and other members of the Class, including without limitation, psychological, financial or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstance to perform or to continue performing labor or services in order to avoid incurring that harm.

108.     Defendants agreed to provide and obtain the labor and services of Plaintiff and other members of the Class by means of a scheme, plan, or pattern intended to cause Plaintiff and other members of the Class to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation, psychological, financial or reputational harm, that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

109.     Defendants agreed to benefit, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

110.     Defendants agreed to recruit, transport, provide, and obtain Plaintiff and members of the Class for labor or services in violation of 18 U.S.C. §§ 1589 and 1590.

111.     Each of the Defendants engaged in at least one overt act in furtherance of the conspiracy, including:

   a)     Defendant RN Express recruited Plaintiff and other Class members in the Philippines to work for the Defendants in the United States, and after their arrival in the United States, warned them of the serious harm they would suffer if they attempted to stop working for the Defendants or to seek employment elsewhere.

   b)     Defendant RN Express failed to pay Plaintiff and other Class members the prevailing wage rates under their employment contracts for all of their work hours.

c)      Defendant Nunez went to the Philippines and recruited Plaintiff and other Class members to be sponsored and employed by the Defendants.

d)      Defendant Alejandrino signed either immigration sponsorship forms or confirmation of offers of employment to Plaintiff or to other Class members who were made to perform and render nursing services.

e)      Each of Defendants Nunez and Alejandrino obtained the services of Plaintiff and other Class members knowing of the employees' "liquidated damages" provisions in their contracts.

112.    Each of the Defendants intentionally engaged in these acts and additional acts in furtherance of their agreed plan to deny Plaintiff and other members of the Class the compensation they were entitled under their employment agreements and to coerce Plaintiff and other Class members to continue working for the Defendants and not to seek employment elsewhere.

113.    Plaintiff and the other Class members suffered damages as a direct and proximate result of the Defendants' conspiracy.

114.    Plaintiff and the other Class members are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorney's fees and the costs of this action.

**THIRD CAUSE OF ACTION**
**Action for Declaratory Judgment**

115.    Plaintiff, on behalf of herself and the members of the Class, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

116.    Defendants' threats to enforce the so-called "liquidated damages" clause and the promissory note addendum/exhibit of the employment contracts constitute threats of serious harm within the meaning of the Trafficking Victims Protection Act.

117.    Plaintiff and members of the Class have been compelled to perform and to continue performing labor or services for Defendant RN Express in order to avoid incurring that harm.

118.    Defendant RN Express's threats to commence legal action against Plaintiff and members of the Class to enforce the penalty and promissory note provisions of the employment contracts are designed to cause them to continue working for the Defendants and refrain from leaving their employment, notwithstanding their failure to pay Plaintiff and members of the Class the legally required and/or contracted compensation.

119.    Plaintiff and members of the Class have been compelled to perform and to continue performing labor or services for Defendant RN Express as a result of its threats.

120.    The 13th Amendment to the United States Constitution provides that involuntary servitude shall not exist within the United States or any place subject to their jurisdiction.

121.    The so-called "liquidated damages" clause and the promissory note addendum/exhibit in the employment contracts are intended to keep Plaintiff and members of the Class in a position of involuntary servitude.

122.    The so-called "liquidated damages" clause and the promissory note addendum/exhibit in the employment contracts have the effect of keeping Plaintiff and members of the Class in a position of involuntary servitude.

123.    A Court may not use its legal authority and power to enforce so-called "liquidated damages" clauses and the promissory note addendum/exhibit in an employment contract that

have the purpose and effect of keeping Plaintiff and members of the Class in a position of involuntary servitude.

124.    The so-called "liquidated damages" clause and the promissory note addendum/exhibit in the employment contracts are an unenforceable penalty.

125.    The amount of the so-called "liquidated damages" is disproportionate to Defendant RN Express's actual or probable losses.

126.    Defendant RN Express's actual damages caused by a breach of the employment contracts are and were readily ascertainable.

127.    The amount of the so-called "liquidated damages" is disproportionate to the compensation of Plaintiff and other Class members.

128.    The purpose and effect of the so-called "liquidated damages" clause is to coerce Plaintiff and other Class members into continuing to work for Defendant RN Express.

129.    The so-called "liquidated damages" clause was the result of unequal bargaining power and a contract of adhesion.

130.    Plaintiff and members of the Class have a definite and concrete dispute with Defendant RN Express concerning the enforceability of the so-called "liquidated damages" clause and the promissory note addendum/exhibit in the employment contracts.

131.    The dispute touches the legal relations of parties having adverse legal interests.

132.    The dispute is real and substantial.

133.    The dispute admits of specific relief through a decree of a conclusive character.

134.    The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

135.    Defendant RN Express's threats to enforce the liquidated damages and the promissory note addendum/exhibit would work to Plaintiff's detriment and injury, and for which she has no adequate remedy at law.

136.    For the above reasons, the liquidated damages and the promissory note addendum/exhibit in the employment agreements are void and unenforceable and in contravention of the laws of the State of New York, in that these are a restraint of trade, against public policy, and constitute an unlawful coercive device designed to depress wages and deprive Plaintiff of the opportunity to resign for good cause, and would effectively compel someone to continue working.

137.    Plaintiff's services as a Registered Nurse are not unique or extraordinary, nor are they of a character that involves the acquisition of any trade secrets of Defendants.  Plaintiff's skills, ability and knowledge obtained in the course of her employment are not the property of Defendants.

138.    The liquidated damages and the promissory note addendum/exhibit contained in the employment agreements are not reasonably necessary to protect any legitimate business interests of the Defendants, and are therefore unenforceable and contrary to public policy as an unnecessary restrain of employment.

139.    The employment agreements containing the $33,320.00 liquidated damages provision are harsh, oppressive, inequitable and unenforceable.  These are adhesive contracts frowned upon in law.

140.    The liquidated damages provisions of the employment contracts are actually a penalty.  While the provision fixed the damages in the event of a breach, the amount liquidated,

which is $33,320.00, did not bear a reasonable proportion to the probable loss. $33,320.00 is grossly disproportionate to the amount of probable loss by the Defendant RN Express.

141.    As a direct and proximate result of Defendant RN Express's threats to enforce the liquidated damages and the promissory note addendum/exhibit by legal action, Plaintiff has suffered and will continue to suffer in the future, direct and consequential damages, including but not limited to, the loss of the ability to exercise her rights to leave her employment for good cause, and to exercise her nursing profession in another environment free of concerns or issues that would jeopardize her nursing license, her health, and the delivery of quality patient care to the patients.

142.    By reason of the foregoing, an actual and justiciable controversy exists between Plaintiff and the members of the Class, on one hand, and Defendant RN Express, on the other hand. Plaintiff seeks a declaratory judgment that the liquidated damages and the promissory note addendum/exhibit in the employment agreements are void and unenforceable.

## FOURTH CAUSE OF ACTION
### Breach of Contract

143.    Plaintiff, on behalf of herself and the Class, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

144.    Plaintiff and the other Class members entered into a valid and binding employment contract with Defendant RN Express.

145.    Plaintiff and the other Class members substantially performed under the contract.

146.    Defendants RN Express, Nunez and Alejandrino breached the contract by failing to immediately provide Plaintiff and the other Class members employment after Plaintiff and the other Class members had presented themselves for employment.

147.    Defendants RN Express, Nunez, and Alejandrino breached the contract by failing to provide Plaintiff and the other Class members the promised position of Registered Nurse Supervisor.

148.    Defendants RN Express, Nunez, and Alejandrino breached the contract by failing to pay Plaintiff and the other Class members the correct prevailing wage rate for the position actually performed by the Plaintiff and the other Class members, which was that of a Registered Nurse Supervisor position.

149.    Defendants RN Express, Nunez, and Alejandrino breached the contract by arbitrarily reducing or deducting work-hours from Plaintiff's and other Class members' actual hours of work, and by not paying them for all of their work-hours.

150.    Plaintiff and the other Class members suffered damages as a direct and proximate result of the breach.

151.    Plaintiff and the other Class members are entitled to compensatory damages for breach of contract in amounts to be determined at trial.

### FIFTH CAUSE OF ACTION
### New York Labor Law (NYLL)

152.    Plaintiff, on behalf of herself and the Class, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

153.    At all relevant times, Plaintiff and the members of the Class, have been employees of the Defendants, and the Defendants have been their employer within the meaning of the New York Labor Law, §§2 and 651.

154.    Defendants have failed to pay the Plaintiff and the members of the Class compensation for all their hours of work, in violation of NYLL Article 19, §§650 *et seq.* and the supporting New York State Department of Labor regulations.

155.    Defendants violated Plaintiff's rights and the rights of the members of the Class, by failing to pay them for all of the hours actually worked by them.  Defendants' violations of the NYLL have been willful and intentional.

156.    Defendants' violations of the NYLL have caused Plaintiff and the members of the Class irreparable harm and injury.

157.    Due to Defendants' NYLL violations, Plaintiff and the members of the Class are entitled to recover from Defendants their unpaid wages, liquidated damages, as well as reasonable attorney's fees, and costs and disbursement of the action.

## **PRAYER**

**WHEREFORE,** Plaintiff, on behalf of herself and all other similarly-situated members, respectfully requests that this Court grant the following relief:

(a)    Against all Defendants, jointly and severally, awarding Plaintiff and members of the Class compensatory and punitive damages for violations of the Trafficking Victims Protection Act; and compensatory and liquidated damages for failure to pay the correct prevailing wage rates and for failure to pay all of their employees' hours of work;

(b)    Against Defendant RN Express, declaring that the so-called "liquidated damages" and the promissory note addendum/exhibit in the employment contracts are unenforceable under the Trafficking Victims Protection Act, 18 U.S.C. § 1589, *et seq.*, the 13th Amendment to the United States Constitution, and New York law; and enjoining Defendant RN Express from enforcing or threatening to enforce the so-called "liquidated damages" and the promissory note addendum/exhibit in the employment contracts against Plaintiff or any other class member in any forum;

(c)    An award of prejudgment and post-judgment interests;

(d)     An award of costs and expenses of this action, together with reasonable attorneys'

fees;

(e)     Such other and further relief as this Court deems just and proper.

Respectfully submitted.
December 6, 2019. Woodside, New York.

Yours, etc.

LAW OFFICE OF FELIX VINLUAN

By:

FELIX VINLUAN (FV6788)
69-10 Roosevelt Avenue, 2nd Fl.
Woodside, NY 11377
Tel. No. 718-478-4488
Fax No. 718-478-4588
Email: fqvinluan@yahoo.com


JUDE TADEO PALCES LAW

By:

JUDE T. PALCES (JP4763)
535 Lakeville Road
New Hyde Park, NY 11040
Tel. No. 917-816-0482
Email: jtpalces@gmail.com

*Attorneys for the Plaintiff*

## VERIFICATION

STATE OF NEW YORK      )
COUNTY OF NASSAU       ) S.S.

I, MARIE ALEXANDRINE BALDIA, also known as MARIE ALEXANDRINE NADELA, of legal age, and presently residing in Nassau County, state of New York, after having been sworn in accordance with law, hereby state that I am the Plaintiff in the within Action/Complaint. I have read the foregoing Complaint and know the contents thereof. The contents are true to my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

_____
**MARIE ALEXANDRINE BALDIA a/k/a**
**MARIE ALEXANDRINE NADELA**

SUBSCRIBED AND SWORN to before me this 6th day of December 2019.

_____
Notary Public

JUDE TADEO PALCES, ESQ.
Notary Public, State of New York
No.02-PA5065772
Qualified in Nassau County
Commission Expires Sept. 16, 2022

31