UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------x
MARIE ALEXANDRINE BALDIA,            )
                        Plaintiff,   )   Case No. 19-cv-11268 (GWG)
                                     )
            v.                       )   JOINT MOTION FOR APPROVAL
                                     )   OF FLSA SETTLEMENT AND
RN EXPRESS STAFFING REGISTRY LLC,    )   DISMISSAL OF CLAIMS WITH
SALLY NUNEZ and ALEXANDER            )   PREJUDICE
ALEJANDRINO,                         )
                        Defendants.  )
-----------------------------------------------------------x
```

Plaintiff Marie Alexandrine Baldia ("Plaintiff") and Defendants RN Express Staffing Registry LLC ("RN Express"), Sally Nunez ("Nunez") and Alexander Alejandrino ("Alejandrino") (collectively, "Defendants"), through their respective counsel of record, submit this Joint Motion for approval of FLSA Settlement and Dismissal of Claims with Prejudice.

## Procedural Background

On December 9, 2019, Plaintiff Marie Alexandrine Baldia commenced this action seeking damages from Defendants RN Express, Nunez, and Alejandrino for alleged forced labor and conspiracy violations of the Trafficking Victims Protection Act ("TVPA"), pursuant to 18 U.S.C. §§ 1589 and 1594, for breach of her employment contract, for declaratory judgment that the $33,320 so-called "liquidated damages" provision of their contract was unenforceable, and for violations of the New York Labor Law ("NYLL") (*see* Dkt. No. 1). She filed an Amended Complaint on July 2, 2020, which added claims for violations of the minimum and overtime wage provisions of the Fair Labor Standards Act ("FLSA") (Dkt. No. 27). Defendants denied and continue to deny any liability with respect to Plaintiff's causes of action, including Plaintiff's FLSA claims, and have raised several defenses thereto (*see generally*, Answer, Dkt. No. 67).

Following District Court Judge Paul G. Gardephe's scheduling order (Dkt. No. 29), Defendants, on August 21, 2020, served Plaintiff their motion to dismiss the Amended Complaint. (Dkt. No. 33). Plaintiff served Defendants her opposition papers (Dkt. No. 35) on September 11, 2020. On September 25, 2020, Defendants served their Reply (Dkt. No. 36) and filed the bundled motion papers.

On September 30, 2022, Judge Gardephe granted Defendants' motion to dismiss Plaintiff's minimum wage claims under the FLSA and the NYLL, and otherwise denied the motion (Dkt. No. 57).

### *Bona Fide* Disputes

In this action, Plaintiff alleges that she worked as a Registered Nurse Supervisor ("RNS") for the Defendants starting in October 2018, and was not paid the prevailing wage rate for the contracted RNS position pursuant to her employment agreement. She also alleges that on several work-weeks she worked more than forty (40) hours per week and was not paid the statutorily-required rate of one and one-half times the regular rate of pay for the hours that she worked in excess of forty (40) hours each workweek, in violation of FLSA. She claims that Defendants unilaterally deducted work-hours from her actual work-hours and did not pay her for all of her work-hours, including some overtime hours when she did overtime work.

Defendants deny the facts underlying Plaintiff's claims and deny that they are liable to Plaintiff. Among other things, Defendants contend that Plaintiff did not work as an RNS. Instead, Defendants allege that Plaintiff requested, and later accepted, the job of Registered Nurse ("RN") at a facility near to her home. Given this change in position and corresponding duties, Defendants allege that Plaintiff was only entitled to the prevailing wage rate for the position of RN, and that she was paid the correct amount commensurate with that position.

2

Thus, there exist *bona fide* disputes between the parties as to: (i) the duties and responsibilities Plaintiff actually performed, that is, whether she performed the duties of a RNS or RN, regardless of the title of her position; (ii) the prevailing wage rate applicable to Plaintiff's position, and; (iii) the overtime rate for any overtime hours worked, and specifically, whether the overtime rate should be based on the regular rate of pay, or on the contracted prevailing hourly wage rate for an RNS position.

### Settlement Negotiations

The parties started informal settlement discussions during the pendency of the motion to dismiss. On October 13, 2022, following Judge Gardephe's decision on Defendants' Motion to Dismiss, the parties participated in a status conference and agreed to stay certain motions briefing to allow the parties to explore a resolution of the dispute. On October 26, 2022, the parties jointly moved and requested that the Court refer the matter to Magistrate Judge Gabriel W. Gorenstein for judicial settlement conference (Dkt. No. 68). On the same day, Judge Gardephe referred the matter to the Magistrate Judge for settlement purposes (Dkt. No. 69).

On October 27, 2022, Magistrate Judge Gorenstein scheduled a settlement conference to be held on November 28, 2022, and ordered the parties to exchange settlement demands, as well as their respective settlement/mediation positions (Dkt. No. 70). The parties complied.

On November 28, 2022, Magistrate Judge Gorenstein moderated the settlement conference. After much back-and-forth settlement discussions, the parties eventually settled at a mutually-acceptable amount, agreed to certain terms set forth in a draft term sheet, and advised the Court that they had resolved their disputes.

The parties, through this motion, seek approval of settlement of Plaintiff's FLSA overtime claim pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir.

3

2015). The parties have memorialized their resolution of Plaintiff's overtime wage claim (as well as the remaining claims pending in this suit) in a negotiated Settlement Agreement and Release (hereinafter, "Settlement Agreement") (Exhibit "A"). They therefore ask the Court to approve of the parties' plan to dismiss all claims in this action with prejudice pursuant to Fed. R. Civ. P. 41(a).

During the course of this case and of the parties' settlement negotiations, the parties exchanged various documents, including Plaintiff's time-sheets, pay stubs and other payroll information. Plaintiff used these documents to calculate her alleged unpaid overtime pay. Plaintiff alleges that the documents indicate there were several work-weeks when Plaintiff did work more than forty (40) hours. Plaintiff further alleges that the pay stubs and other payroll documents show Defendants did not pay Plaintiff any or some of her overtime hours evidenced by her timesheets. Plaintiff's maximum computation of alleged unpaid overtime pay took into account a regular rate that was based on the prevailing wage rate of her RNS position. Plaintiff alleges that her computation amounted to $7,484.15 in unpaid overtime pay (*see* Exhibit "B"). Defendants contend that Plaintiff is not entitled to any additional overtime payment. Moreover, Defendants contend that they properly calculated overtime pay using Plaintiff's regular rate of pay for her RN position.

Regardless of the factual and legal arguments raised by the parties, the parties have arrived at a global settlement amount for all of Plaintiff's causes of action. The parties have expressly agreed that the Settlement Agreement in no way constitutes an admission of liability or wrongdoing by Defendants. Consistent with that agreement, the parties did not apportion the settlement amount to any particular cause of action.

For purposes of this motion, however, Plaintiff submits that her maximum recoverable amount for actual unpaid overtime wages, should this case have gone to trial and had she been successful, would be $7,484.15. Likewise for purposes of this motion, Plaintiff submits that an equal amount of $7,484.15 would be recoverable by her as liquidated damages in accordance with the statutory damages available under the FLSA. Of the global settlement amount of ▮▮▮▮, Plaintiff respectfully submits that settlement of the FLSA claims, including attorney's fees for such claims, would be $22,452.45.

## The Settlement is a Fair and Reasonable Compromise

The FLSA generally prohibits settlement of any claims for unpaid overtime without supervision from the Secretary of Labor. 29 U.S.C. § 216(c). However, courts have determined that settlement of FLSA claims may also be permitted in the context of judicially supervised stipulated settlement agreements. *Simel v. JP Morgan Chase*, No. 05-cv-9750 (GDB), 2007 U.S. Dist. LEXIS 18693, at *11 (S.D.N.Y., Mar. 19, 2007). A court may approve an FLSA settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07-cv-0086, 2008 U.S. Dist. LEXIS 46174, at *2 (E.D.N.Y., June 12, 2008) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.")

The parties represent to the Court that the Settlement Agreement: (a) is reasonable to all parties; and (b) demonstrates the good faith intention by the parties that Plaintiff's claims for liability and damages be fully and finally resolved, and not re-litigated in whole or in part at any point in the future. The parties believe that their settlement is reasonable because they reached an

5

agreement with respect to the monetary terms of the settlement after substantial negotiations and discussion.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit apply a five-factor test as articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The first *Wolinsky* factor examines "the plaintiff's range of possible recovery." *Id.* With respect to Plaintiff's FLSA claims, her range of possible actual recovery maximizes at $7,484.15, assuming her basis for the regular rate of pay is correct. As stated above, Defendants vigorously dispute Plaintiff's claim and argue that no additional overtime payment is warranted and that overtime pay was properly calculated based on Plaintiff's actual RN regular rate of pay.

Accordingly, based on the above, regardless of how the various factual and legal disputes might ultimately be resolved, the settlement is a fair resolution of Plaintiff's FLSA claim.

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation omitted). Settling Plaintiff's claims at this point will avoid continuing litigation costs for all parties. Had this action not settled, there would have likely been discovery practice, including depositions, dispositive motion practice, and probably a trial. Settlement at this point will obviate that time-consuming and expensive litigation.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id.* All parties face the risk of losing. There clearly is a dispute whether Plaintiff worked as an RNS or as an RN, and; whether or not Defendants paid Plaintiff the correct prevailing wage rate. Accordingly, the resolution of this case will depend on the parties' credibility and payroll

records, making such resolution unpredictable. The agreed settlement amount would obviously be in jeopardy if the case went forward.

The fourth *Wolinsky* factor examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel." *Id.* (internal quotation omitted) As mentioned above, the parties reached their agreements only after undertaking substantial negotiations and bargaining between counsel of record, as facilitated by the Court.

The parties are represented by experienced counsel. Plaintiff's lead counsel on the FLSA cause of action, Felix Vinluan, Esq., has been representing immigrant workers for the past 22 years, the last 12 of which have been almost exclusively concentrated on employment law, primarily in wage and hour and TVPA matters. Defendants' lawyers, Steptoe & Johnson LLP, and its lawyers, Ryan P. Poscablo, Esq., Patricia B. Palacios, Esq. and Lisa M. Southerland, Esq., are experienced commercial litigators.

There is a strong presumption in favor of finding a freely negotiated FLSA settlement to be fair because the parties are in a better position to determine the reasonableness of the settlement. *See Aguilar v. N & A Productions, Inc.,* No. 19-cv-1703 (RA), 2019 U.S. Dist. LEXIS 185030, at *2 (S.D.N.Y., Oct. 24, 2019; *Lliguichuzhca v. Cinema 60, LLC*, 948 F.Supp.2d 362, 366 (S.D.N.Y. 2013) ("[C]ourts typically regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.")

The fifth *Wolinsky* factor examines the "possibility of fraud or collusion." *Id.* There was no fraud or collusion in this case. The settlement was achieved after several rounds of back-and-forth negotiation, which enabled the parties to fully evaluate and appreciate the benefits to this resolution. The settlement was finalized under the guidance and supervision of the Magistrate Judge during the November 28, 2022 settlement conference held in court. This settlement

agreement was achieved only after arms-length and good faith negotiations between the parties. There are no indicia of any fraud or collusion in this case. In fact, as stated, it was Magistrate Judge Gorenstein who moderated the parties' settlement/mediation conferences and marshaled them up to the resolution of their disputes.

Further absent are any factors that would weigh against the Court approving the settlement here. Plaintiff Baldia is the sole plaintiff in this case, and she alone will be affected by the dismissal. *See Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15 Civ. 112 (PAE), 2015 WL 7736551, at *2 (S.D.N.Y. Nov. 30, 2015). In addition, because Plaintiff has stopped working for Defendants a few weeks after the Complaint was filed, there is no reason to believe that Defendants used improper leverage to obtain the settlement. *See Cisneros v. Schnipper Restaurant, LLC*, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014). Plaintiff's complaint also does not "raise novel factual or legal issues that would further the development of law in this area." *Santos v. Yellowstone Properties, Inc.*, No. 15-cv-3986, 2016 WL 2757427, at *3 (S.D.N.Y., May 10, 2016).

**The Attorney Fee Component of the Settlement Is Fair and Reasonable**

In addition to assessing the reasonableness of the settlement award, "the court must also assess the reasonableness of any attorneys' fee award." *Scherzer v. LVEB, LLC*, 2015 WL 7281651, at *1 (E.D.N.Y. Nov. 16, 2015) (citing *Wolinsky* 900 F. Supp. 2d at 336). Courts examine attorneys' fees in FLSA settlements "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC, supra.* (citing *Wolinsky*, 900 F. Supp. 2d at 336).

8

Courts within the Second Circuit typically approve attorney fees that range between 30% and 33.33% of the total settlement payment. *Rodriguez-Hernandez v. K Bread & Company, Inc.*, 2017 U.S. Dist. LEXIS 78034, at *13 (S.D.N.Y., May 23, 2017). In assessing reasonableness, courts consider the "lodestar" amount, which is the product of a reasonable hourly rate multiplied by the reasonable number of hours required by the case. *Id*. at *13. A court's assessment is guided by the local market rate for similar services provided by attorneys of comparable skill, experience, and reputation, which is typically between $300 and $400 per hour for lead wage and hour attorneys in and around New York City. *Id*. at *14.

In support of the Settlement Agreement related to attorney fees, Plaintiff has attached hereto as Exhibit "C" the December 16, 2022 Declaration by Felix Q. Vinluan, who was Plaintiff's lead counsel with respect to the FLSA claim. Mr. Vinluan has submitted contemporaneous time records whereby he has expended at least forty (40) hours for Plaintiff's FLSA claim. The amount Mr. Vinluan would receive under the terms of the Settlement Agreement --- $7,484.15 --- is equivalent to one-third of the amount that Plaintiff is allocating for Plaintiff's total FLSA recovery ($22,452.45). Significantly, Plaintiff's settlement payment after deduction of Mr. Vinluan's fees remains equal to the amount the parties reasonably believe is her maximum overtime recovery if she were successful at trial --- including statutory liquidated damages.

Mr. Vinluan's lodestar amount with respect to the FLSA claim alone is $16,000 based on his hourly rate of $400.00 multiplied by the forty (40) hours he has expended specifically on Plaintiff's FLSA claim. Mr. Vinluan has agreed to accept less than he has billed for this matter, and his retainer agreement (Exhibit "D") with Plaintiff which is based on a contingency fee equal to the greater of court-awarded fees or one-third of the gross amount of Plaintiff's recovery after

9

deduction of expenses. Therefore, the amount provided to Mr. Vinluan under the Settlement Agreement is fair, reasonable, and well within the range of fees typically awarded in cases in the Second Circuit.

## **CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court approve the parties' hard-negotiated Settlement Agreement, as drafted, and approve their proposed dismissal of this action with prejudice.

Alternatively, if the Court cannot approve the parties' Settlement Agreement as drafted, the parties reasonably request that the Court grant leave for the parties to file a revised Settlement Agreement in lieu of denying this Motion so that the parties may address the Court's concerns, if any. *See Fisher v. SD Protection, Inc.*, 948 F.3d 593, 605 (2d Cir. 2020) (noting that a court may provide parties with an opportunity to revise settlements held to be unreasonable).

| For the Plaintiff: | For the Defendants: |
|---|---|
| By: | By: |
| *s/ Felix Q. Vinluan, Esq.* <br> Felix Q. Vinluan, Esq. <br> Law Office of Felix Vinluan <br> 69-10 Roosevelt Avenue, 2/F <br> Woodside, NY 11377 <br> Tel: (718) 478-4488 <br> Email: fqvinluan@yahoo.com | *s/ Ryan P. Poscablo, Esq.* <br> Ryan P. Poscablo, Esq. <br> Steptoe & Johnson LLP <br> 1114 Avenue of the Americas <br> New York, NY 10036 <br> Tel: (212) 506-3921 <br> Email: rposcablo@steptoe.com |
| Jude Tadeo Palces, Esq. <br> Law Office of Jude Palces <br> 535 Lakeville Road <br> New Hyde Park, NY 11040 <br> Tel: (917) 816-0482 <br> Email: jude@palceslaw.net | Patricia B. Palacios, Esq. <br> Lisa M. Southerland, Esq. <br> Steptoe & Johnson LLP <br> 1330 Connecticut Avenue NW <br> Washington, DC 20036 <br> Tel: (202) 429-3000 <br> Email: ppalacios@steptoe.com <br> Email: southerland@steptoe.com |

Dated:   December 16, 2022.